UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

In re: INDU CRAFT INC.,                                    :

                                          Debtor.          :

----------------------------------------------------------------X

INDU CRAFT, INC., TRENDI SPORTSWEAR, INC.,    :
TZE WUNG CONSULTANTS, LTD.,                            :
                                                          :
                                          Appellants,     :
                                                          :
                          -v-                             :
                                                          :
BANK OF BARODA,                                           :
                                                          :
                                          Appellee.       :

----------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/27/12
```

11 Civ. 5996 (JMF)
11 Civ. 6303 (JMF)
11 Civ. 6304 (JMF)

Case No. 97 B 44958 (RDD)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

It is a "fundamental precept" of the American legal system "that a 'right, question or fact

distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be

disputed in a subsequent suit between the same parties or their privies . . . .'" *Montana v. United

States*, 440 U.S. 147, 153 (1979) (quoting *S. Pac. R. Co. v. United States*, 168 U.S. 1, 48-49

(1897)). This precept, embodied in the related doctrines of res judicata and collateral estoppel, is

"central to the purpose for which civil courts have been established, the conclusive resolution of

disputes within their jurisdictions." *Id.* Indeed, "[t]o preclude parties from contesting matters

that they have had a full and fair opportunity to litigate" not only "protects their adversaries from

the expense and vexation attending multiple lawsuits," but also "conserves judicial resources[]

and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions."

*Id.*; *see also, e.g.*, *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624-25 (2d Cir.

2007) ("*Res judicata* is a rule of fundamental repose important for both the litigants and for

1

society.  It relieves parties of the cost and vexation of multiple lawsuits, conserves judicial resources, and, by preventing inconsistent decisions, encourages reliance on adjudication.") (internal citations, quotation marks, and brackets omitted).

These principles of finality "are particularly important in the bankruptcy context, where numerous contending claims and interests are gathered, jostle, and are determined and released." *Corbett v. MacDonald Moving Servs., Inc.*, 124 F.3d 82, 91 (2d Cir. 1997).  And they apply in full force to the present cases, three related appeals from orders of the United States Bankruptcy Court for the Southern District of New York (Drain, J.).  The disputes at issue in these cases have now been litigated for a full quarter century, have received the attention of every level of the federal judiciary multiple times, and have traveled back and forth repeatedly between bankruptcy court and this tribunal.  *See Bank of India v. Trendi Sportswear, Inc.*, No. 89 Civ. 5996 (JSM), 1991 WL 12369 (S.D.N.Y. Jan. 29, 1991); *Indu Craft, Inc. v. Bank of Baroda*, No. 87 Civ. 7379 (KTD), 1991 WL 107438 (S.D.N.Y. June 11, 1991); *Indu Craft, Inc. v. Bank of Baroda*, No. 87 Civ. 7379 (KTD) (LB), 1993 WL 535116 (S.D.N.Y. Dec. 17, 1993), *rev'd on other grounds*, 47 F.3d 490 (2d Cir. 1995); *Indu Craft, Inc. v. Bank of Baroda*, No. 87 Civ. 7379 (SHS) (LB), 1995 WL 479516 (S.D.N.Y. Aug. 10, 1995), *aff'd*, 87 F.3d 614 (2d Cir. 1996), *cert. denied*, 519 U.S. 1041 (1996); *Bank of India v. Trendi Sportswear, Inc.*, No. 89 Civ. 5996 (JSM), 2002 WL 84631 (S.D.N.Y. Jan. 18, 2002), *aff'd*, 64 Fed. App'x 827 (2d Cir.), *cert. denied sub nom. Indu Craft, Inc. v. Bank of India*, 540 U.S. 1074 (2003).  More than *nine* years ago, the Second Circuit observed that "this case has had a long and convoluted history, perhaps made more difficult to penetrate by its circuitous path from one judicial forum to another and back again."  64 Fed. App'x at 830.  Since that time, the history of the case has become only longer and more convoluted.

2

Enough is enough.  The Supreme Court has stated that "[i]t is just as important that there should be a place to end as that there should be a place to begin litigation," *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 154 (2009) (quoting *Stoll v. Gottlieb*, 305 U.S. 165, 172 (1938)), and in this case, the place to end the litigation has come and gone.  Accordingly, and for the reasons stated below, the Bankruptcy Court's orders are AFFIRMED.

## BACKGROUND[1]

These cases involve separate, but related, appeals by Appellants Indu Craft, Inc. ("Indu Craft"), Trendi Sportswear, Inc. ("Trendi"), and Tze Wung Consultants, Ltd. ("Tze Wung") from orders of the United States Bankruptcy Court for the Southern District of New York (Drain, J.), dated August 15, 2007 (Docket No. 192 ( "2007 Order")) and July 1, 2011 (Docket No. 223 ("2011 Order")).[2]  Until it filed for bankruptcy in 1997, Indu Craft  imported women's clothing from Asia for sale in the United States through its affiliate Trendi;[3] Tze Wung, a Hong Kong corporation, is now Indu Craft's sole shareholder; and Appellee Bank of Baroda ("Baroda" or the "Bank") is a banking corporation owned and operated by the government of India.  The 2007 Order denied Appellants' motions to modify or clarify certain provisions of Indu Craft's Second Amended Plan of Reorganization (Docket No. 164-2 (the "Plan")) to exempt from the Plan's

---

[1]     A more detailed account of the factual background underlying these cases may be found in the previous opinions of this Court and the Second Circuit cited above.  The following account is limited to those facts relevant to this appeal.

[2]     All docket references in this Opinion are to the Bankruptcy Court docket, No. 1:97-bk-44958.

general discharge provision a judgment that Indu Craft owed to Trendi.  The 2011 Order denied

Appellants' motions for reconsideration of the 2007 Order.

## A.  *Baroda I*

In 1983, Baroda extended a $500,000 line of credit to Indu Craft to finance its business

operations.  Over the next few years, Baroda periodically increased this line of credit, which

topped out at $2.7 million in December 1986.  After a dispute with Indu Craft in early 1987,

however, Baroda reduced Indu Craft's advance limit and began to delay and refuse to issue

letters of credit on its behalf.  As a result, Indu Craft's suppliers delayed shipment of goods, and

some suppliers entirely stopped producing goods for Indu Craft's account.  Indu Craft eventually

ceased its importing operations in November 1987.

In October 1987, Indu Craft commenced a diversity action against Baroda and

Krishnakant Chokshi, an Executive Vice President of Baroda, in this Court.  The case, *Indu*

*Craft, Inc. v. Bank of Baroda*, 87 Civ. 7379 ("*Baroda I*"), was assigned to District Judge Kevin

T. Duffy.  In its complaint, Indu Craft alleged that Baroda had breached the covenant of good

faith and fair dealing implied in the credit agreement, tortiously interfered with Indu Craft's

contracts, and committed a prima facie tort in retaliation for Indu Craft's decision not to invest in

an investment opportunity offered to it by Baroda's principal officer in New York.  In July 1992,

the case was tried before a jury, which found for Indu Craft on all claims.  A judgment was

entered in Indu Craft's favor for $2,519,822.29, after adjustments on appeal.

---

[3]     Prior to 1992, Indu Craft and Trendi were both wholly owned by the same person:
Hemant C. Mehta.  (*See* Docket No. 190).

**B.  *Baroda II***

Meanwhile, in September 1989, the Bank of India ("BOI") — another banking corporation owned and operated by the government of India — commenced a lawsuit in this Court against Trendi for defaulting on a demand promissory note.  The case, *Bank of India v. Trendi Sportswear, Inc.*, No. 89 Civ. 5996 ("*Baroda II*"), was assigned to then-District Judge John S. Martin.  In May 1990, Trendi filed a third-party action against Indu Craft, alleging that Indu Craft's failure to supply goods had caused Trendi's default on the BOI credit facilities (the "Third Party Action").  Indu Craft, in turn, brought a fourth-party action against Baroda in June 1990, seeking indemnification from the Bank in the event that Indu Craft was found liable to Trendi (the "Fourth Party Action").  In October 1990, Judge Martin stayed the Third and Fourth Party Actions, pending resolution of *Baroda I.*  In April 1991, Judge Martin awarded BOI summary judgment against Trendi in the amount of $1,844,895.19, plus $400,000 in interest.

**C.  Indu Craft's Bankruptcy**

In July 1997, Indu Craft filed a petition for bankruptcy relief under Chapter 11. Thereafter, Trendi filed a claim for the damages alleged in the Third Party Action in *Baroda II*. In March 1999, Indu Craft filed its Plan of Reorganization with the Bankruptcy Court.  Most relevant for present purposes, the Plan contemplated that Indu Craft would pursue its Fourth Party Action against Baroda, stating that Trendi and others would "receive their net proceeds of any recovery in Baroda II, . . . after deduction for the reimbursement to Tze Wung Consultants, Ltd. of its funding of the Plan, the funding of the Baroda II litigation pursuant to a future agreement, legal fees, costs and disbursements."  (Plan § 5.2).  The Plan also provided that "[t]he Debtor consents to judgment being entered against it in the third party action in Baroda II for the amount of Trendi's claim as determined in the Bankruptcy Court."  (*Id.*).  At the same time, the

5

disclosure statement accompanying the Plan cautioned that "[t]here can be no assurance that the Debtor will recommence the litigation in Baroda II, or that such litigation, if commenced would be resolved in the Debtor's favor."  (Notice of Motion, Ex. C, Docket No. 85 at 31 ("Disclosure Statement")).

In addition, Section 9.1 of the Plan provided Indu Craft with a discharge from all claims arising prior to the "Effective Date" and from any liability of a kind specified in Sections 502(g), 502(h), and 502(i) of the Bankruptcy Code.  (Plan § 9.1(a)).  The Plan further precluded and enjoined all parties from asserting any claims against Indu Craft (*id.* §§ 9.1(b), 9.2), and rendered null and void all judgments against Indu Craft with respect to any debt discharged "pursuant to the Plan and section 1141(d)(1) of the Bankruptcy Code."  (*Id.* § 9.1(c)).  The Plan provided Indu Craft with the right to modify its terms "before substantial consummation" (*id.* § 10.5), and granted the Bankruptcy Court "original, but not exclusive, jurisdiction" to resolve disputes under the plan, including those concerning "the scope or effect of any release or discharge."  (*Id.* § 11.1).

In March 1999, Tze Wung and Trendi voted in favor of the Plan after entering into stipulations with Indu Craft regarding their claims.  On March 30, 1999, the Bankruptcy Judge then presiding over the proceedings — Jeffry H. Gallet — confirmed the Plan.  (Order Confirming Plan of Reorganization, Docket No. 134-2 ("Confirmation Order")).  Among other things, the Confirmation Order provided that "all assets and properties" of the bankruptcy estate "shall revest in [Indu Craft] free and clear" of encumbrances (Confirmation Order at 8); that the Plan "shall bind . . . all creditors" of Indu Craft (*id.* at 7); that Indu Craft "shall be discharged pursuant to § 1141 of the Bankruptcy Code from all Claims against and Interests in [Indu Craft] that arose prior to the Effective Date" (*id.* at 8); that any claim "discharged under the

6

Confirmation Order, the [] Plan, or pursuant to § 1141(d)(1) of the Bankruptcy Code" shall be "permanently enjoin[ed]" (*id.* at 10); and that "any judgment" against Indu Craft "with respect to any debt discharged pursuant to the [] Plan . . . shall be null and void." (*Id.* at 9).

Appellees — Indu Craft, Trendi, and Tze Wung — did not object to, or appeal from, the Confirmation Order, which became final and non-appealable in April 1999.  Thereafter, Indu Craft made distributions to Trendi, Tze Wung, and other creditors as required by the Plan. (Docket No. 163, at 1).  In addition, Indu Craft and Trendi took steps with respect to the Third Party Action.  Specifically, on January 18, 2000, with the consent of Indu Craft, the Bankruptcy Court entered judgment for Trendi in the Third Party Action in the amount of $21,101,348.47. (Judgment, Docket No. 158 (the "Trendi Judgment")).  A few months later, in May 2000, Indu Craft moved to close its bankruptcy case, affirming that the Plan "was substantially consummated as provided in [Bankruptcy Code] § 1101(2)."  (Application for Final Decree, Docket No. 160-3, at 1).  On May 17, 2000, the Bankruptcy Court closed Indu Craft's bankruptcy case, ordering that, "as provided for in the Plan, [Indu Craft] is discharged and released from any and all claims of creditors," and enjoining the holders of claims from instituting or continuing any action to collect such debts.  (Docket No. 163, at 2).

**D.  The 2002 District Court Decision**

In 2001, Indu Craft filed an amended fourth party complaint in *Baroda II* seeking indemnification for the Trendi Judgment from Baroda.  Thereafter, Baroda moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  On January 18, 2002, Judge Martin granted the Bank's motion and dismissed the Fourth Party Action.  *See Bank of India*, 2002 WL 84631, at *4 (the "2002 Order").  Judge Martin noted that, under New York law, "[i]t is black letter law . . . that an indemnification claim does not arise until the party seeking

7

indemnification has an out-of-pocket loss to be reimbursed." *Id.* (citing cases).  Applying this

principle, he concluded that Indu Craft's indemnification claim failed as a matter of law because

Indu Craft would never go "out of pocket" to Trendi.  "[S]ince Indu Craft has been discharged

from its obligation to pay Trendi the judgment entered against it in the bankruptcy proceeding,

and Trendi is barred from seeking to enforce that judgment against Indu Craft," the Court

reasoned, "Indu Craft's action for indemnification cannot succeed, as a matter of law . . . ." *Id.*

Judge Martin was unswayed by the fact that the Plan "contemplated the pursuit" of the

Fourth Party Action.  *Id.*  As he explained, "[w]hile it is true that Trendi agreed to give up its

claim, except to the extent that Indu Craft is successful in recovering in this action, the language

of the Plan does not actually bind Indu Craft to pursue this litigation.  Moreover, even a clear

obligation to pursue the litigation would not create a viable claim where none exists."  *Id.*

"Given that the Trendi judgment against Indu Craft has not been paid, and cannot be enforced

against Indu Craft," the Judge concluded, "Indu Craft's claim for indemnification against Baroda

cannot stand, as a matter of law, and the Fourth Party Complaint must be dismissed." *Id.* at *5.

In September 2002, Indu Craft sought to reopen its bankruptcy case to obtain additional

funds to appeal Judge Martin's decision.  (Docket No. 164).  It did not, however, ask the

Bankruptcy Court to modify or clarify the Plan or otherwise exempt the Trendi Judgment from

the Plan's discharge and injunction provisions.  By Order dated September 30, 2002, Judge

Gallet granted Indu Craft's request, but expressly stated that nothing in the order "shall constitute

or be construed as a modification of the confirmed plan." (Docket No. 169, at 2)).  Indu Craft

then appealed Judge Martin's decision to the Second Circuit.  By summary order issued May 15,

2003, the Court of Appeals affirmed dismissal of the Fourth Party Action "largely for the reasons

stated" by Judge Martin. *Bank of India*, 64 F. App'x at 830.  The United States Supreme Court

denied Indu Craft's petition for the writ of certiorari on December 8, 2003. *See Indu Craft, Inc.*, 540 U.S. at 1074.

**E.  Bankruptcy Court Proceedings**

In March 2007 — over five years after Judge Martin's decision and almost eight years after Judge Gallet confirmed the Plan — Appellants Indu Craft, Trendi, and Tze Wung each moved the Bankruptcy Court for an order eliminating, or temporarily suspending, the discharge of the Trendi Judgment under the Plan.  (Docket Nos. 173, 174, 175, 183).  Indu Craft sought an order: (1) "clarifying" the effect of the Plan; (2) modifying the Plan to vacate the injunction provisions; or (3) temporarily suspending the discharge provisions of the Plan.  (Docket No. 183-1 at 2).  Trendi sought an order that: (1) Indu Craft remained personally liable to Trendi and other creditors based on (a) the Trendi Judgment, (b) the confirmed Plan, and (c) the stipulations by and between Indu Craft and its creditors; and (2) Indu Craft was only conditionally discharged from the Trendi Judgment, as the Plan was either an executory accord or a substitute agreement.  (Docket No. 174-1 at 1).  Tze Wung asked the Bankruptcy Court to restore "the bargained-for provisions of the Plan" by: (1) modifying the Plan; (2) waiving the discharge provision, "thus erasing Trendi's and the Debtor's obstacle to proceeding against Bank of Baroda"; (3) temporarily lifting or suspending the discharge to allow Indu Craft to enforce its claim against Bank of Baroda; or (4) permitting Indu Craft to file a successive bankruptcy filing. (Docket No. 173-1 at 14-20).  Baroda opposed the motions on a number of grounds, including res judicata, the Plan's substantial consummation, and untimeless.  (Docket No. 178-1, at 11, 18, 27-28).

Bankruptcy Judge Robert D. Drain (to whom the proceedings had been reassigned following Bankruptcy Judge Gallet's death) denied Appellants' motions in the 2007 Order.  To

9

the extent relevant here, Judge Drain held first that Indu Craft could not waive its discharge of the Trendi Judgment because that discharge was a product of the Plan and Confirmation Order themselves and any effort to revoke the Confirmation Order would be untimely under Section 1144 of the Bankruptcy Code. (2007 Order at 5-6).  Second, the Bankruptcy Court concluded that modification of the Plan pursuant to Section 1127(b) of the Bankruptcy Code was impermissible because the Plan had been "substantially consummated" as that term is defined in Section 1101(2) of the Code. (*Id.* at 6).  Judge Drain held that Appellants had failed to meet their burden of showing that the Plan was not substantially consummated because: (1) "the transfer of all or substantially all of the property proposed by the plan to be transferred" to the post-confirmation debtor — namely, the Fourth Party Action against Baroda — had occurred; (2) the post-confirmation debtor had assumed management of the litigation and, by extension, the debtor's business; and (3) Indu Craft had commenced distributions under the Plan. (*Id.* at 6). *See* 11 U.S.C. § 1101(2) (defining "substantial consummation").

Third, Judge Drain reasoned that, even if he had grounds to grant the requested relief, "it would be moot, in that, given that the debtor has no assets, no cash, and only its rights under an indemnification claim, the debtor would not, in the words of Judge Martin's opinion, 'go out-of-pocket' to Trendi." (2007 Order at 7).  That is, even if relief were otherwise available under either Section 1127(b) or Section 1144 of the Code, "the debtor, being an empty shell, would not satisfy the requirement of Judge Martin's decision in *Baroda* [*II*]" that an indemnification claim requires actual loss. (*Id.* at 7).  Nor was Judge Drain "prepared to rule, given the result in *Baroda* [*II*], that the debtor would not have to go out of pocket, but, rather, would need to obtain merely a 'conditional ruling,' in order to pursue its litigation claims against Baroda." (*Id.* at 8).

Finally, Judge Drain rejected Appellants' argument that the Plan contained "internally inconsistent provisions" that could be read to mean that the discharge and injunction provisions in the Plan and Confirmation Order did not apply to the Trendi Judgment. For one thing, Judge Drain explained, "such relief" would have no effect "because, again, the debtor has no assets and, therefore, would not go out-of-pocket to Trendi even if Trendi had no legal impediment to recovery from the debtor." (*Id.*). In addition, he concluded that there was no "clear[] erro[r]" or "internal inconsistency" in the Plan and Confirmation Order that might allow for their clarification or correction. (*Id.* at 8). The parties, Judge Drain noted, were well aware when the Plan was confirmed that Indu Craft might not recover anything in the Fourth Party Action. At the same time, "the discharge provisions appear all over the plan and the confirmation order," and it had to be "assume[d] that the parties who were involved in drafting those two documents and in reviewing them knew the meaning of those provisions." (*Id.* at 9).

In August 2007, Trendi moved for reconsideration pursuant to Rule 9023 of the Federal Rules of Bankruptcy Procedure (which incorporates Rule 59 of the Federal Rules of Civil Procedure). (Docket No. 194). In March 2011, Tze Wung filed a motion under Bankruptcy Rule 9024 (which largely incorporates Rule 60(b)(6) of the Federal Rules of Civil Procedure), again seeking relief from the Plan and the Confirmation Order. (Docket No. 209-2). Tze Wung's motion led Judge Drain to hold a hearing on May 12, 2011. (*See* Docket No. 221).[4] Thereafter, Judge Drain denied both motions in the 2011 Order. With respect to Trendi's motion, the Bankruptcy Court concluded that the contention that the Plan had not been "substantially consummated" was "clearly wrong." (2011 Order at 9). In support of that conclusion, Judge

---

[4]     Trendi's Bankruptcy Rule 9023 motion apparently slipped under the Bankruptcy Court's radar until Tze Wung filed its motion more than three and a half years later. (2011 Order at 3-4).

Drain cited the reasons set forth in his 2007 Order as well as Indu Craft's own acknowledgment in prior filings that the Plan had been "fully implemented and administered." (*Id.* at 10 (quoting Docket No. 160)). Judge Drain noted also that, under the terms of the Confirmation Order, "all assets and properties of the Estate" — including the *Baroda II* litigation — had "revest[ed]" in Indu Craft "free and clear of all Liens, Claims and encumbrances." (*Id.* at 10 (quoting Confirmation Order at 8)).

The Bankruptcy Court rejected Tze Wung's Rule 9024 motion on three grounds. First, Tze Wung waited over three and a half years to make the motion rather than bringing it "within a reasonable time" as required by Rule 60(c)(1) of the Federal Rules of Civil Procedure. (*Id.* at 13-15). Second, Tze Wung's assertion of error did not rise to the level of "extraordinary circumstances" or "extreme and undue hardship" that would justify relief under Rule 60(b)(6). (*Id.* at 15). And finally, Judge Drain concluded that Tze Wung's argument — that, pursuant to Section 1141(d)(3) of the Bankruptcy Code, Indu Craft's debt to Trendi could not be discharged because Indu Craft was a liquidating debtor — was "incorrect." (*Id.* at 15). Whether or not Judge Gallet erred in confirming the Plan and discharging the Trendi Judgment, Judge Drain reasoned, the Confirmation Order was final and res judicata. (*Id.* at 16). Further, Judge Drain concluded, the "the clear language" of both the Plan and the Confirmation Order provided for "an unqualified section 1141 discharge 'from all Claims against and Interests in the Debtor that arose prior to the Effective Date.'" (*Id.* at 17 (quoting Plan § 9.1(a) and citing Confirmation Order ¶ F(1)(a))).

12

## DISCUSSION

This Court has jurisdiction over the Appellants' appeal from the 2007 and 2011 Orders of the Bankruptcy Court pursuant to Title 28, United States Code, Section 158(a)(1).[5] On appeal, Appellants raise a range of arguments. Indu Craft and Trendi assert that the Bankruptcy Court erred in: (1) finding that the Plan was substantially consummated because the transfer of substantially all of the debtor's assets did not occur; (2) failing to modify or clarify the Plan by either eliminating the discharge provisions pertaining to the Trendi Judgment or construing those provisions not to apply to the Trendi Judgment; and (3) finding that modification or clarification of the Plan was moot because Indu Craft could not suffer an out-of-pocket loss from the Trendi Judgment. Trendi also argues that the Court should hold that: (1) Indu Craft remained personally liable to Trendi based on (a) the Trendi Judgment, (b) the confirmed Plan, and (c) the stipulations by and between Indu Craft and its creditors; and (2) Indu Craft was only conditionally discharged from the Trendi Judgment because the Plan was either an executory accord or a substitute agreement. Finally, Tze Wung contends that Baroda does not have standing before the Court and that, because Indu Craft was a liquidating debtor, its debts could not be discharged pursuant to Bankruptcy Code Section 1141(d)(3).

## A. Standard of Review

With respect to the 2007 Order, this Court evaluates the Bankruptcy Court's findings of fact for clear error and its conclusions of law *de novo. See, e.g.*, *In re Bennett Funding Grp.,*

---

[5]    Although the present appeals were taken almost four years after the 2007 Order, they are timely because, pursuant to the Federal Rules of Bankruptcy Procedure 8002(b)(4), Trendi's and Tze Wung's motions for reconsideration under Rules 9023 and 9024, respectively, tolled Appellants' time to appeal the 2007 Order until fourteen days after Judge Drain ruled on the motions. As Judge Drain issued the 2011 Order on July 1, 2011, the Notices of Appeal, filed by Tze Wung on July 11, 2011 (Docket No. 226), by Trendi on July 13, 2011 (Docket No. 229), and by Indu Craft on July 15, 2011 (Docket No. 230) were timely.

*Inc.*, 146 F.3d 136, 138 (2d Cir. 1998); *In re Teligent, Inc.*, 326 B.R. 219, 224 (S.D.N.Y. 2005). A finding is clearly erroneous only if, after reviewing all of the evidence, "the reviewing court . . . is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985). "[W]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Hernandez v. New York*, 500 U.S. 352, 369 (1991); *accord In re Kollel Mateh Efraim, LLC*, 456 B.R. 185, 191 (S.D.N.Y. 2011). "[T]he burden of demonstrating that the Bankruptcy Court's findings of fact are clearly erroneous rests squarely on the shoulder of the appellant.'" *Id.* (quoting *In re Ciena Capital*, 440 B.R. 47, 52 (S.D.N.Y. 2010)).

On the other hand, the Court reviews the Bankruptcy Court's 2011 Order — denying Trendi's and Tze Wung's motions for reconsideration — only for abuse of discretion. *See, e.g.*, *Key Mech. Inc. v. BDC 56 LLC*, No. 01 Civ. 10173 (RWS), 2002 WL 467664, at *2 (S.D.N.Y. Mar. 26, 2002); *McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir. 1983) (abuse-of-discretion standard under Rule 59(e)); *Jones v. Trump*, 971 F. Supp. 783, 786 (S.D.N.Y. 1997) (abuse-of-discretion standard under Rule 60). A court abuses its discretion when its decision (1) "rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding"; or (2) "though not necessarily the product of legal error or clearly erroneous factual finding[,] cannot be located within the range of permissible decisions." *In re Aquatic Dev. Grp., Inc.*, 352 F.3d 671, 678 (2d Cir. 2003); *see also ABKCO Music, Inc. v. Stellar Records, Inc.*, 96 F.3d 60, 64 (2d Cir. 1996) ("[A]buse of discretion . . . usually involves either the application of an incorrect legal standard or reliance on clearly erroneous findings of fact."), *abrogation on other grounds recognized by Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010).

14

## B. Baroda's Standing

Before turning to the merits, the Court pauses to briefly address an issued raised by Tze Wung: Baroda's standing to participate in these proceedings. The Bankruptcy Court concluded that Baroda did have standing to participate because "the only reason" for the Appellants' motions was "to be able to renew the litigation against Bank of Baroda," thereby giving the Bank a "direct pecuniary interest" in the matter. (2007 Order at 4). There is reason to doubt, however, that such an interest is sufficient to give Baroda standing, as many courts have held that being "subject[ed] to the possibility of future litigation" by a bankruptcy court order is "insufficient to confer standing" on appeal. *Fidelity Bank, Nat. Ass'n v. M.M. Grp., Inc.*, 77 F.3d 880, 883 (6th Cir. 1996); *see also, e.g.*, *In re LTV Steel Co., Inc.*, 560 F.3d 449, 453-54 (6th Cir. 2009) ("[W]e are aware of no court that has held that the burden of defending a lawsuit, however onerous or unpleasant, is the sort of direct and immediate harm that makes a party 'aggrieved' so as to confer standing in a bankruptcy appeal."); *In re Teligent, Inc.*, 417 B.R. 197, 210-11 (Bankr. S.D.N.Y. 2009) (holding that "a person whose only interest is as a party defendant has no pecuniary interest in a court order authorizing the suit against that appellant and no standing to appeal that order"), *aff'd*, No. 09 Civ. 09674 (PKC), 2010 WL 2034509 (S.D.N.Y. May 13, 2010), *aff'd*, 640 F.3d 53 (2d Cir. 2011). *But see, e.g.*, *In re Heating Oil Partners, LP*, 422 Fed. App'x 15, 17 (2d Cir. 2011) (summary order) (finding that an insurer had standing to appeal a bankruptcy court decision because the decision would have a "direct impact" on whether the insurer would be required to pay indemnity).

Ultimately, this Court need not resolve the issue of Baroda's standing because whether or not the Bank has standing, the Bankruptcy Court had an independent authority, if not obligation, to examine Appellants' motions, *see* 11 U.S.C. § 105(a), and this Court has jurisdiction to review

15

the Bankruptcy Court's final orders on appeal, *see* 28 U.S.C. § 158(a)(1).  As Section 105(a) of

the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).  Applying this provision, courts have held that, so long as an *appellant* has

standing to appeal a bankruptcy court order — as Appellants indisputably do in this case — the

district court "has a duty to rule on it whether or not any party has standing as an appellee."  *In re*

*Geneva Towers Assocs.*, No. C-93-2390 CW, 1994 WL 124840, at *5 (N.D. Cal. Mar. 30, 1994);

*accord In re Reserve Capital Corp.*, No. 03-60071, 2007 WL 880600, at *3 n.4 (Bankr.

N.D.N.Y. Mar. 21, 2007); *Maxwell Newspapers, Inc. v. Travelers Indem. Co.*, 170 B.R. 549, 550

(S.D.N.Y. 1994); *In re Pagano Dev. Co., Inc.*, Civil Case No. 11-4448 (FSH), 2011 WL

5082203, at *3 n.4 (D. N.J. Oct. 25, 2011).  Thus, even if Baroda lacks standing, the Bankruptcy

Court was authorized to rule on Appellants' motions and this Court may review the Bankruptcy

Court's orders on appeal.[6]

## C.  The Merits

Turning to the merits, it is well established that Section 1127(b) of the Bankruptcy Code

"provides the sole means for modification of [a] plan of reorganization after it has been

---

[6]      Contrary to Tze Wung's contention (*see* Tze Wung Reply Br. at 3), whether Baroda has standing has no bearing on the Court's ability to consider collateral estoppel and res judicata.  In fact, the law is clear that this Court may consider these doctrines of preclusion *sua sponte. See, e.g., O'Connor v. Pierson*, 568 F.3d 64, 68 n.2 (2d Cir. 2009) ("[A] court has authority to invoke the doctrine of res judicata on its own initiative, even when the defense has been waived."); *Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998) (affirming a district court's decision to take up the question of issue preclusion *sua sponte*).

confirmed." 7 LAWRENCE P. KING ET AL., COLLIER ON BANKRUPTCY ¶ 1127.04 (15th ed. Rev. 1997) (hereinafter "COLLIER"); *accord In re Ionosphere Clubs, Inc.*, 208 B.R. 812, 815 (S.D.N.Y. 1997); *In re Rickel & Assoc., Inc.*, 260 B.R. 673, 677 (Bankr. S.D.N.Y. 2001). That provision provides, in relevant part, that "[t]he proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan." 11 U.S.C. § 1127(b). By its terms, therefore, the statute does not allow for modification of a plan after it has been "substantially consummated" (a term that is defined, in turn, by Section 1101(2) of the Bankruptcy Code). *See, e.g.*, *Ionosphere Clubs*, 208 B.R. at 815 (citing 7 COLLIER ¶ 1127.04[3], at 1127-9). The statute thereby "reinforces the principle of finality by preserving the rights bought and paid for under the plan." *Rickel & Assoc.*, 260 B.R. at 677 (citing cases); *see also id.* ("Confirmation is the equivalent of a final judgment in a civil litigation.") (citing 7 COLLIER ¶ 1127.04[3], at 1127-9).

### 1. Appellants' Arguments About the Meaning, Scope, and Effect of the Plan and Confirmation Order Are Barred by Res Judicata and Collateral Estoppel

In the present case, Appellants raise at least four sets of arguments for why the Bankruptcy Court could have granted the relief they seek — at bottom, allowing Indu Craft to pursue the Fourth Party Action against Baroda — without modifying the Plan pursuant to Section 1127(b). First, noting that the Bankruptcy Court retained "original, but not exclusive" jurisdiction to resolve post-confirmation disputes related to the Plan, and contending that the Plan is internally inconsistent or ambiguous, Appellants argue that the Bankruptcy Court should have "clarified" the Plan to confirm that the Trendi Judgment and the Fourth Party Action were not subject to its discharge provisions. (Indu Craft Br. 28-38; Trendi Br. 5, 12-13). Second, Appellants maintain that, even assuming *arguendo* that the Trendi Judgment was discharged and

17

there is no danger that Indu Craft would go "out of pocket," the Fourth Party Action should be allowed to proceed because, under New York law, Indu Craft could obtain a conditional judgment against Baroda. (Indu Craft Br. 38-42; Trendi Br. 15-17). Third, Trendi contends that the Plan was an "executory accord" that replaced Indu Craft's prior liability to Trendi with a new liability that was not subject to the discharge provisions of the Plan. (Trendi Br. 23-24). And finally, Tze Wung asserts that Indu Craft was a liquidating debtor and, therefore, not subject to discharge pursuant to Section 1141(d)(3) of the Bankruptcy Code. (Tze Wung Br. 18-19).

Whether or not these arguments can be reconciled with the limitations on modification of a reorganization plan set forth in Section 1227(b), *see, e.g.*, *Rickel & Assoc.*, 260 B.R. at 678 (holding that a bankruptcy court may not rely on its equitable powers or rules of procedure to "provide a remedy that the Bankruptcy Code has substantively foreclosed"), all of these arguments suffer from the same fatal flaw: They are precluded by the Bankruptcy Court's confirmation of the Plan, Judge Martin's 2002 decision dismissing the Fourth Party Action, or both. Judge Gallet's confirmation of Indu Craft's Plan was indisputably a final judgment, from which Appellants did not appeal. As such, the terms of the Confirmation Order are entitled to their effect. And to the extent that the Confirmation Order did not by itself preclude Appellants from litigating the question of whether Indu Craft's claims against Baroda survived the Plan, that question was squarely and definitively answered by Judge Martin in his ruling, which was affirmed on appeal. Appellants may not have been happy with the outcome of the litigation before Judge Martin, but they were bound by it and could not relitigate the issues in bankruptcy court, even if Judge Martin's and the Second Circuit's rulings were in error.

"It is well settled that preclusion principles apply in bankruptcy proceedings." *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006). These principles include the "related but distinct

18

doctrines" of res judicata and collateral estoppel. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). Under the former doctrine, also known as "claim preclusion," a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *EDP Med. Computer Sys.*, 480 F.3d at 624 (internal quotation marks omitted). Under the latter doctrine, also known as "issue preclusion," a party and its privies are barred "from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding," regardless of whether it is in the same cause of action. *Marvel Characters*, 310 F.3d at 288. In either case, the preclusive effects of a final judgment are not "altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); *accord Laaman v. United States*, 973 F.2d 107, 112 (2d Cir. 1992).

Applying these principles here, many of Appellants' arguments are precluded by Judge Gallet's Confirmation Order. Among other things, that Order provided that "all assets and properties" of the bankruptcy estate "shall revest in [Indu Craft] free and clear" of encumbrances (Confirmation Order at 8); that Indu Craft "shall be discharged pursuant to § 1141 of the Bankruptcy Code from all Claims against and Interests in [Indu Craft] that arose prior to the Effective Date" (*id.* at 8); that any claim "discharged under the Confirmation Order, the [] Plan, or pursuant to § 1141(d)(1) of the Bankruptcy Code" shall be "permanently enjoined" (*id.* at 10); and that "any judgment" against Indu Craft "with respect to any debt discharged pursuant to the [] Plan . . . shall be null and void." (*Id.* at 9). Once the Confirmation Order became final — which it did over twelve years ago, in April 2000, when the time to appeal from it expired — it "became res judicata to the parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other

admissible matter which might have been offered for that purpose." *Travelers Indem. Co.*, 557 U.S. at 152 (internal quotation marks omitted); *see also, e.g.*, *Sure-Snap Corp. v. State St. Bank & Trust Co.*, 948 F.2d 869, 872-73 (2d Cir. 1991) (holding that an order confirming a plan of reorganization has preclusive effect).[7]

If the Confirmation Order were the only earlier final judgment at issue in this case, some of Appellants' arguments might well escape preclusion. For example, Indu Craft cites some authority (albeit not from this Circuit) for the proposition that res judicata "does not bar a litigant from seeking an interpretation and/or clarification of an ambiguous reorganization plan." (Indu Craft Reply Br. 14-15 (citing cases)).[8] And the question of whether Indu Craft could obtain a conditional judgment under New York law on its indemnification claim even if it could not go "out of pocket" to Trendi was not an issue in the earlier bankruptcy proceedings. *See EDP Med. Computer Sys.*, 480 F.3d at 624 (noting that, for res judicata to apply, the causes of action must be the same). But these arguments run headlong into Judge Martin's 2002 decision dismissing the Fourth Party Action, in which the Court held unambiguously that the Plan and Confirmation

---

[7]     Even without applying res judicata, many courts have held that when a plan has been substantially consummated, the confirmation order no longer is subject to review. *See, e.g.*, *In re Metromedia Fiber Network*, 416 F.3d 136, 144-45 (2d Cir. 2005) (holding that the appeal of an order confirming a "substantially consummated" plan that included a third party release is equitably moot even though the release in question should not have been approved); *In re Loral Space & Commc'ns Ltd.*, 342 B.R. 132, 136-38 (S.D.N.Y. 2006) ("When a plan of reorganization has been substantially consummated, an appeal is presumed moot."). As discussed below, the Plan in this case has been substantially consummated. Accordingly, Appellants' challenges to the Plan and Confirmation Order are arguably moot in any event.

[8]     Even if the Court found that the Plan and Confirmation Order were ambiguous as applied to the Trendi Judgment, it is "far from clear" that Appellees would be entitled to relief given the Bankruptcy Court's interpretation of the Confirmation Order in the 2007 and 2011 Orders. *Travelers Indem. Co.*, 557 U.S. at 151 n.4. As the Second Circuit has held, "a bankruptcy court's interpretation of its own confirmation order is entitled to substantial deference." *Id.* (citing *In re Casse*, 198 F.3d 327, 333 (2nd Cir. 1999)).

Order discharged Indu Craft "from its obligation to pay Trendi the judgment entered against it in the bankruptcy proceeding"; that Trendi was "barred from seeking to enforce that judgment against Indu Craft"; and that Indu Craft's Fourth Party Action could not, therefore, "succeed, as a matter of law, and must be dismissed." 2002 WL 84631, at *4. In other words, the parties litigated the very questions they raise in this case before Judge Martin: whether the Plan's discharge provisions applied to the Trendi Judgment — he held they did — and whether Indu Craft could pursue its indemnification claim against Baroda — he held it could not.

In light of these rulings, Appellants are collaterally estopped from making any argument that the Trendi Judgment was not discharged under the Plan or that Indu Craft would be entitled to pursue the Fourth Party Action despite such discharge. These issues were raised, considered, and decided by Judge Martin and, thereafter, by the Second Circuit. Appellants (or, in Tze Wung's case, its privies) had a full and fair opportunity to litigate the issues — and did litigate them all the way up to the Supreme Court of the United States. And finally, Judge Martin's rulings were plainly necessary to support a valid and final judgment on the merits, as they were the basis for his dismissal of the Fourth Party Action. *See Marvel Characters*, 310 F.3d at 288-89 (summarizing the elements of collateral estoppel). Appellants, having "voluntarily litigated" both the scope and interpretation of the Plan as well as its effects on the Fourth Party Action in the District Court, "could not re-litigate the issues in bankruptcy court, even if the [District Court's] ruling was erroneous." *In re 1095 Commonwealth Ave. Corp.*, No. MB 98-051, 1999 WL 35128686, at *2 (B.A.P. 1st Cir. July 14, 1999); *see also, e.g.*, *In re Brady, Tex., Mun. Gas Corp.*, 936 F.2d 212, 216-20 (5th Cir. 1991) (holding that a state court's erroneous interpretation of a confirmed plan's discharge provisions was binding on the bankruptcy court); *In re Landreth Lumber Co.*, 393 B.R. 200, 204-05 (Bankr. S.D. Ill. 2008) (holding that the prior determination

by a state court that the injunctive provision of a debtor's confirmed plan protected only sureties was entitled to issue preclusive effect under Indiana law).

Appellants make two arguments for why Judge Martin's decision should not be given preclusive effect here, but neither argument has merit — in part because Appellants focus on the doctrine of res judicata rather than collateral estoppel. First, Trendi argues that res judicata requires that the earlier case involved the same parties or their privies and the same cause of action, arguing — by implication, at least — that these requirements are lacking here. (Trendi Reply Br. 7). The 2002 case, however, did involve the same parties or, in Tze Wung's case, its privies. [9] And while res judicata requires an identity of the cause of action, "collateral estoppel, or issue preclusion, bars the relitigation of an issue that was raised, litigated, and actually decided by a judgment in a prior proceeding, *regardless of whether the two suits are based on the same cause of action.*" *Postlewaite v. McGraw-Hill*, 333 F.3d 42, 48 (2d Cir. 2003) (emphasis added).

Second, citing cases holding that res judicata does not apply to unaccrued claims, Appellants contend that Judge Martin did not dismiss Indu Craft's indemnification claim on the merits, but merely held that the claim was premature because it would not accrue until payment was made on the underlying debt. (Indu Craft Reply Br. 17-19; Trendi Reply Br. 7-8). This

---

[9]    Although not a party in *Baroda II*, Tze Wung was a signatory to the Plan, the financier of the *Baroda II* litigation, and is in privity with Indu Craft, as its sole shareholder. *See Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000) (holding that "a party will be bound by the previous judgment if his interests were adequately represented by another vested with the authority of representation") (internal quotation marks omitted); *Alpert's Newspaper Delivery, Inc. v. the N.Y. Times Co.*, 876 F.2d 266, 270 (2d Cir. 1989) (finding that res judicata applied, because "[d]espite the fact that the MRA was not a named party in either action, it was the admitted mastermind and financier of the *Belfiore* litigation and it is providing similar tactical and financial help in the instant case"); *see also, e.g.*, *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 701 F. Supp. 2d 568, 586 n.11 (S.D.N.Y. 2010) ("There is no bright line rule as to whether privity exists for [preclusion] purposes . . . . The core question is whether the parties' incentives to pursue [the] lawsuit were substantially similar.") (citations and quotation marks omitted).

22

argument, however, fundamentally mischaracterizes Judge Martin's decision. He did not dismiss Indu Craft's indemnification claim on the ground that it had not yet accrued; instead, he dismissed the claim on the ground that it could not, as a matter of law, *ever* accrue — because Indu Craft's debt to Trendi had been discharged by the Plan. *See* 2002 WL 84631, at *4 ("[S]ince Indu Craft has been discharged from its obligation to pay Trendi the judgment entered against it in the bankruptcy proceeding, and Trendi is barred from seeking to enforce that judgment against Indu Craft, *Indu Craft's action for indemnification cannot succeed, as a matter of law, and must be dismissed.*") (emphasis added). Whether or not res judicata can apply to an unaccrued claim, Appellants are estopped from challenging *that* conclusion, and thus precluded from making any argument that the indemnification claim survives the Plan as written.

In short, Appellees or their privies had a full and fair opportunity to litigate their arguments about the meaning, scope, and effect of the Plan and Confirmation Order with respect to the Fourth Party Action and, for the most part, did actually litigate those arguments. They may not have been satisfied with Judge Martin's interpretation of the Plan and Confirmation Order, or his ultimate judgment that the Fourth Party Action could not proceed under the existing terms of those documents, but — once the Supreme Court denied certiorari and that judgment became final — they were stuck with that judgment, whether it was right or wrong.[10]

---

[10]   Even if Appellants' arguments about the interpretation of the Plan and its effect on the Fourth Party Action were not precluded, they would face serious obstacles. For example, Appellants' 2007 motions for clarification or modification of the Plan were arguably untimely, as they were brought approximately four years after the Supreme Court denied certiorari in the appeal from Judge Martin's 2002 Order and eight years after the Plan was originally confirmed. *See* 11 U.S.C. § 727(e) (providing that a request to revoke a discharge must generally be made within one year of the discharge); *id.* § 1044 (providing that a request to revoke confirmation of a plan on account of fraud must be made within 180 days of confirmation); FED. R. BANKR. P. 9024 (providing that Rule 60 of the Federal Rules of Civil Procedure generally applies to cases under the Bankruptcy Code); FED. R. CIV. P. 60(c)(1) (providing that a motion for relief from a

### 2. The Bankruptcy Court Did Not Err in Ruling that the Plan Was No Longer Subject to Modification Pursuant to Section 1127(b) of the Bankruptcy Code

For the reasons stated above, Appellees are precluded by the double bind of the Confirmation Order and Judge Martin's 2002 Order from relitigating the meaning and scope of the existing Plan or its effects on the Trendi Judgment and the Fourth Party Action. As an alternative form of relief, Appellees asked the Bankruptcy Court to modify the Plan pursuant to Section 1127(b) and, on appeal, challenge the Bankruptcy Court's denial of that request. That relief is not precluded by the Confirmation Order or Judge Martin's decision insofar as it is premised on accepting that the Plan and Confirmation Order mean what the Bankruptcy Court and Judge Martin said they mean. Nevertheless, modification of the Plan is precluded by the plain terms of Section 1127(b) itself because Judge Drain committed no clear error in finding that the Plan was already "substantially consummated."

As noted above, Section 1127(b) allows "[t]he proponent of a plan or the reorganized debtor" to "modify" a plan of reorganization as long as the plan has not been "substantial[ly]

---

final judgment or order pursuant to Rule 60(b) "must be made within a reasonable time"). Nor could Appellants necessarily demonstrate the "exceptional circumstances" required for relief pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure. *See, e.g.*, *New York v. Green*, 420 F.3d 99, 108 n.3 (2d Cir. 2005); *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986). Moreover, for the reasons stated by Judge Martin and Judge Drain, the Plan does not appear to be ambiguous, as it unequivocally discharges "*all* Claims against and Interests in the Debtor that arose prior to the Effective Date . . . ." (Plan § 9.1 (emphasis added)), which plainly includes the Trendi Judgment. And finally, despite the Bankruptcy Court's passing assertion to the contrary, it does not appear that Indu Craft was a liquidating debtor. (*See, e.g.*, Plan § 7.2 (Indu Craft will "continue to exist after the Effective Date as a separate corporate entity in accordance with the laws of the State of New York."); *id.* § 7.8 ("Any balance remaining after the satisfaction of such claims shall be retained by the Debtor."); Confirmation Order ¶ 17 ("Confirmation of the Modified Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor . . . ."). Accordingly, Section 1141(d)(3), which provides that the confirmation of a plan "does not discharge a debtor" in some cases involving liquidation, would not seem to apply. Nevertheless, this Court need not reach these myriad arguments, as the Appellants are precluded from raising them.

consummat[ed]." 11 U.S.C. § 1127(b); *accord Ionosphere Clubs*, 208 B.R. at 815.  For a plan to

be substantially consummated, three conditions must generally be met:

> (A)    transfer of all or substantially all of the property proposed by the plan to
>        be transferred;
> (B)    assumption by the debtor or by the successor to the debtor under the plan
>        of the business or of the management of all or substantially all of the
>        property dealt with by the plan; and
> (C)    commencement of distribution under the plan.

11 U.S.C. § 1101(2); *see also, e.g.*, *In re Baker*, No. CV05-3487 (CPS), 1-01-24227 (DEM),

2005 WL 2105802, at *7 (E.D.N.Y. Aug. 31, 2005).  The proponent of modification, however,

has the burden of establishing that the plan has *not* been substantially consummated.  *See, e.g.*, *In

re Boylan Int'l, Ltd.*, 452 B.R. 43, 48 (Bankr. S.D.N.Y. 2011).  The bankruptcy court's

determination of whether a plan has been substantially consummated is a factual finding that is

reviewed on appeal for clear error.  *See, e.g.*, *Baker*, 2005 WL 2105802, at *7; *In re Lafayette

Hotel P'ship*, Nos. 96 Civ. 7476 HB, 95 B 40682 BRL, 1997 WL 599386, at *2 (S.D.N.Y. Sept.

29, 1997) (citing COLLIER ¶ 1101-8).

In this case, there appears to be no dispute that the second and third conditions for

substantial consummation were met insofar as the reorganized Indu Craft assumed management

of the *Baroda II* litigation and distributions under the plan were commenced.  (*E.g.*, Indu Craft

Br. 28).  Instead, Appellants contend that the Bankruptcy Court erred in finding that the first

condition — "transfer of all or substantially all of the property proposed by the plan to be

transferred," 11 U.S.C. § 1101(2)(A) — was met because the indemnification claim against

Trendi, the Fourth Party Action, was transferred to the post-confirmation Indu Craft.  (Indu Craft

Br. 23-27; Trendi Br. 12-20).  Specifically, Appellants contend that the Fourth Party Action

could not be transferred because it was effectively "nullified" by Judge Martin's 2002 Order.

(Trendi Br. 18). "Since the Trendi Judgment was rendered void *ab initio*," Appellants contend, "Indu Craft lost any property interest it had in the causes of action contained in the Fourth Party Complaint, *nunc pro tunc*, upon confirmation and no property interest transferred or re-vested in the reorganized Indu Craft after confirmation." (Indu Craft Reply Br. 23).

This argument does not survive scrutiny. As an initial matter, it is not even clear that the first condition for substantial consummation must be met in the circumstances of this case. As the Court held in *In re Fansal Shoe Corp.*, 119 B.R. 28 (Bankr. S.D.N.Y. 1990), Section 1101(2)(A) "has significance only when the plan calls for the transfer of property by the debtor in addition to the distribution of dividends to creditors." *Id.* at 30-31; *see also In re Antiquities of Nevada, Inc.*, 173 B.R. 926, 929-30 (B.A.P. 9th Cir. 1994) (holding that substantial consummation barred modification when the debtor had assumed management and control of the property administered under the plan, distributions had commenced under the plan, and the plan did not provide for any transfers of non-cash property). That is, where a plan does "not call for any transfers of properly," but instead revests all assets in a reorganized debtor — as the Plan does in this case (*see* Plan §§ 5.1, 5.2, 7.1(b); Confirmation Order at 8 ("Except as otherwise provided for herein, or in the Modified Plan, on the Effective Date, all assets and properties of the Estate shall revest in the Debtor . . . .")) — substantial consummation occurs upon satisfaction of only the two conditions set forth in Section 1101(2)(B) and (C).

But even if Section 1101(2)(A) does apply to this Plan, Judge Drain committed no clear error in concluding that Appellants did not meet their burden to demonstrate that the Plan was not substantially consummated. As a general matter, it is well established that "[e]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach" of the term "property of the estate." *In re Saint Vincents Catholic Med. Ctrs.*

*of N.Y.*, 449 B.R. 209, 217 (S.D.N.Y. 2011) (quoting *Chartschlaa v. Nationwide Mut. Ins. Co.*,

538 F.3d 116, 122 (2d Cir. 2008)).  As the Second Circuit has held, "[s]uch interests include

causes of action possessed by the debtor at the time of filing" for bankruptcy.  *In re Jackson*, 593

F.3d 171, 176 (2d Cir. 2010); *accord Seward v. Devine*, 888 F.2d 957, 963 (2d Cir. 1989) ("The

bankruptcy estate encompasses 'all legal or equitable interests of the debtor in property as of the

commencement of the case,' including any causes of action possessed by the debtor.") (quoting

11 U.S.C. § 541(a)(1)) (citations omitted); *see also, e.g.*, *Barger v. City of Cartersville*, 348 F.3d

1289, 1292 (11th Cir. 2003) (stating that the property of a bankruptcy estate includes all

"potential" causes of action that exist on the petition date).  Accordingly, Indu Craft's

indemnification claim — that is, the Fourth Party Action — was part of the bankruptcy estate

and thus transferred to the reorganized Indu Craft upon confirmation of the Plan.

> The fact that, nearly three years after confirmation, Judge Martin held that Indu Craft's
> indemnification claim failed as a matter of law does not alter this conclusion.  The Fourth Party
> Action indisputably existed when the Plan was confirmed and thus constituted property of the
> bankruptcy estate.  Further, the transfer of the claim to the post-confirmation debtor was not
> contingent upon it being litigated to a successful conclusion; in fact, the Plan's disclosure
> statement expressly contemplated that the claim might not ultimately be successful.  (*See*
> Disclosure Statement at 31).  To conclude otherwise would run counter to the strong public
> interest in "speedy and efficient" bankruptcy proceedings, as the question of whether a cause of
> action constituted property of the bankruptcy estate — and, thus, whether some plans had been
> substantially consummated — would be unanswerable until the cause of action had been litigated
> to final judgment.  *In re Refco Inc.*, 505 F.3d 109, 119 (2d Cir. 2007); *see also Celotex Corp. v.*

27

*Edwards*, 514 U.S. 300, 308 (1995) (noting Congress's intent that bankruptcy courts "deal efficiently and expeditiously with all matters connected with the bankruptcy estate").

Notably, Appellants cite no authority for the proposition that a cause of action is not property of a bankruptcy estate where, as here, it existed at the time of confirmation but was later dismissed as meritless. Indu Craft and Trendi rely instead on cases holding that termination of a contract right is not a "transfer" under the Bankruptcy Code. (Indu Craft Br. 25; Trendi Br. 18). These cases are inapposite, however. Moreover, in each case, the debtor committed a breach that terminated, or permitted the other party to terminate, the debtor's rights under the breached contract, *prior to* the adjudication of bankruptcy. *See, e.g.*, *In re Wey*, 854 F.2d 196, 199-200 (7th Cir. 1988) (debtor forfeited his deposit when he defaulted under the terms of a contract to purchase real estate prior to filing for bankruptcy); *In re McGhee*, No. 99-2019, 2000 WL 33950115, *3 (Bankr. S.D. Ga. Apr. 28, 2000) (finding that debtor's pre-petition default on a contract to buy was an extinguishment of his equitable interest in the property, not a transfer); *In re Commodity Merch. Inc.*, 538 F.2d 1260, 1262-63 (7th Cir. 1976) (noting that the contracts were breached by the debtor and were terminated pursuant to a contractual provision ten days before the debtor was adjudicated bankrupt); *In re Queen City Grain, Inc.*, 51 B.R. 722, 726 (Bankr. S.D. Ohio 1985) (finding that the debtor's pre-petition termination of a lease by reason of default is not a transfer); *In re Durso Supermarkets, Inc.*, 193 B.R. 682, 698 (Bankr. S.D.N.Y. 1996) (holding that lessor's termination of Chapter 11 debtor's interest in commercial lease based on debtor's prepetition default was not a fraudulent transfer).[11]

---

[11]     Ironically, two of the cases cited by Trendi actually support the position that termination of an agreement *does* constitute a "transfer." *See In re Queen City Grain, Inc.*, 51 B.R. 722, 726 (Bankr. Ohio 1985) (finding that termination of debtor's lease was a transfer subject to fraudulent conveyance provisions); *In re Durso Supermarkets, Inc.*, 193 B.R. 682, 698 (Bankr.

Nor is there any merit to Trendi's contention that, if the property transferred under the Plan was merely the "management of the litigation" of Indu Craft's "worthless" claim, "Judge Drain placed a construction on the Plan that makes it a criminal offense, because champerty is a misdemeanor under New York law." (Trendi Br. 19). First, even assuming *arguendo* that transfer of the claim did violate the anti-champerty statute, that is not a valid basis to re-litigate the Bankruptcy Court's actions, which, as discussed above, are res judicata. Second, and in any event, transfer of the Fourth Party Action in this case did not violate the prohibition on champerty, which "has always been limited in scope and largely directed toward preventing attorneys from filing suit merely as a vehicle for obtaining costs." *Trust for the Certification of Merrill Lynch Mortg. Investors, Inc. v. Love Funding Corp.*, 13 N.Y.3d 190, 199 (N.Y. 2009) (citation and quotation marks omitted). As New York courts have long held, "[w]hat the statute prohibits . . . 'is the purchase of claims with the intent and for the purpose of bringing an action that [the purchaser] may involve parties in costs and annoyance, where such claims would not be prosecuted if not stirred up . . . in [an] effort to secure costs.'" *Id.* at 201 (quoting *Wightman v. Catlin*, 98 N.Y.S. 1071, 1074 (App. Div. 2d Dep't 1906)). That is plainly not the situation here, as there is no dispute that Indu Craft intended to, and did, litigate the Fourth Party Action in good faith.

In short, Judge Drain's finding that the Plan was substantially consummated is not clearly erroneous. Relying on *In re Boylan International, Ltd.*, 452 B.R. 43 and *In re Temple Zion*, 125 B.R. 910 (Bankr. E.D. Pa. 1991), Indu Craft and Trendi argue that the Bankruptcy Court was nonetheless permitted to modify the Plan because dismissal of the Fourth Party Action was an

---

S.D.N.Y. 1996) (finding that pre-petition default under the terms of a real estate lease effected a transfer under Section 101(54) of the Bankruptcy Code, but not a fraudulent conveyance under Section 548 of the Code).

29

unforeseen circumstance. (Indu Craft Reply Br. 26-28; Trendi Br. 13-15). This argument, however, fails for two reasons. First, the potential failure of the Fourth Party Action was anything but unforeseen, as the Plan's disclosure statement expressly contemplated that the claim might not be prosecuted to a successful conclusion. (*See* Disclosure Statement at 31). Second, and in any event, the cases upon which Indu Craft and Trendi rely did not hold that modification of a plan is permitted after substantial consummation; in each case, the court found that the plan at issue had not yet been substantially consummated and allowed modification on that basis. *See Boylan Int'l, Ltd.*, 452 B.R. at 49 ("In this case, the payment to M & T does not make the Plan substantially consummated."); *Temple Zion*, 125 B.R. at 914 ("[I]t is apparent that 'substantial consummation' of the Plan has not been effected here.").

In light of his finding that the Plan had been substantially consummated, therefore, Judge Drain committed no error in his 2007 Order denying Appellants' motion to modify the Plan. *See, e.g.*, *In re Adelphia Commc'n Corp.*, 367 B.R. 84, 92 n.25 (S.D.N.Y. 2007) ("Substantial consummation precludes modification of a plan."). For the same reasons, among others, Judge Drain did not abuse his discretion in his 2011 Order denying Trendi's and Tze Wung's motions for reconsideration of the 2007 Order.

## CONCLUSION

For the reasons set forth above, the Court concludes that the Bankruptcy Court did not err in denying Appellants the relief they were seeking from the Confirmation Order and Judge Martin's 2002 Order. That result may well be a regrettable windfall for Baroda, as it will never be held accountable for the role it appears to have played in Indu Craft's failure to supply Trendi with goods (which, in turn, caused Trendi to default on its demand promissory note). But it is

the result compelled by the important interest of both the bankruptcy system and the American legal system in finality.  Appellants had a full and fair opportunity to litigate the claims they raise in this case and, having failed to obtain the relief they are seeking in the twenty-five years of litigation that preceded this appeal, they should not be permitted another bite at the same apple. Indeed, "[t]o indulge" their desire for another such bite "would be an acquiescence in the abuse of the judicial process."  *Schmeider v. Hall*, 545 F.2d 768, 771 (2d Cir. 1976).

Accordingly, the orders of the Bankruptcy Court are AFFIRMED.  The Clerk of Court is directed to close these cases.


SO ORDERED.

Dated: July 27, 2012
       New York, New York

                                    _____
                                    JESSE M. FURMAN
                                    United States District Judge